IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTONIO POLK, | § | |
| | § | Civil Action No. 4:26-cv-4153 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| FEDERAL EXPRESS CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

TO THE HONORABLE JUDGE:

Plaintiff Antonio Polk presents his Complaint for unlawful race discrimination, hostile work environment, and retaliation against Defendant Federal Express Corporation, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 (the "Civil Rights Act of 1866") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII").

NATURE OF THIS ACTION

1. FedEx violated the Civil Rights Act of 1866 and Title VII by discriminating against Plaintiff because of his race and in retaliation for reporting and opposing race discrimination.

2. Defendant Federal Express Corporation is the surviving entity of a June 1, 2024, merger in which FedEx Ground Package System, Inc., along with FedEx Corporate Services, Inc., merged with and into Federal Express Corporation. Federal Express Corporation is a wholly owned subsidiary of FedEx Corporation, one of the world's largest package delivery companies, and operates a regional sorting facility located at 505 Aldine Bender Road, Houston, Texas 77060 (the "Houston Building"), known internally as ALRS-793.

3. FedEx hired Plaintiff Polk on July 19, 2021, as an Operations Supervisor and promoted him to Area Manager on November 16, 2022.

4. As an Area Manager, Polk was responsible for overseeing the day-to-day operations on the overnight midnight sort shift at the Houston Building.

5. FedEx treats African American or Black employees differently and less favorably than non-Black employees.

6. FedEx subjects Black employees to discriminatory performance reviews, discipline, discriminatory denial of workplace resources, discriminatory assignment of tasks, discriminatory denial of support, a hostile work environment, and systematically eliminates Black employees from the workforce through termination, demotion, transfer, or constructive discharge, and retaliates against Black workers for raising concerns about discrimination.

7. Plaintiff alleges that FedEx discriminated against him by treating him differently from and less favorably than similarly situated non-Black employees and subjecting him to discriminatory performance reviews, discipline, discriminatory denial of workplace resources, discriminatory assignment of additional tasks, discriminatory denial of support, a hostile work environment, disparate terms and conditions of employment, and retaliation in response to his complaints of discrimination, in violation of the Civil Rights Act of 1866 and Title VII.

8. FedEx subjected Plaintiff, who is Black, to systemic race discrimination as described in this Complaint.

9. The systemic racial discrimination is continuing in nature.

10.     Plaintiff seeks declaratory and injunctive relief; back pay; front pay; compensatory, nominal and punitive damages; and attorneys' fees, costs and expenses to redress FedEx's pervasive and discriminatory employment policies, practices and procedures.

## JURISDICTION AND VENUE

11.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 28 U.S.C. § 1331.

12.     The suit is authorized and instituted pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981 and Title VII, 42 U.S.C. §§ 2000e to 2000e-17; and declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), the judicial district in which a substantial part of the events giving rise to this claim occurred.

## Administrative Exhaustion

14.  Plaintiff has satisfied all conditions precedent to bringing this action under Title VII.

15.     On or about September 19, 2025, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC Charge No. 460-2025-02732) alleging race discrimination and retaliation by Defendant.

16.     The EEOC issued Plaintiff a Notice of Right to Sue dated February 25, 2026.

17.     Plaintiff timely files this Complaint within ninety (90) days of receipt of the Notice of Right to Sue.

## PARTIES

### A.     Plaintiff

18.     Antonio Polk is a citizen of the United States, residing in Harris County, Texas.

19.    Plaintiff Polk is Black or African American.

**B.    Defendant**

20.    Defendant Federal Express Corporation is a Delaware corporation authorized to do business in Texas.

21.    Effective June 1, 2024, FedEx Ground Package System, Inc. merged with and into Federal Express Corporation, with Federal Express Corporation being the surviving entity.

22.    Federal Express Corporation may be served with process through its registered agent for service in Texas, CT Corp System, 1999 Bryan St., Ste 900, Dallas, Texas 75201.

FACTUAL ALLEGATIONS

23.    FedEx has a pattern and practice of discriminating and retaliating against Black employees.

24.    FedEx discriminated against Plaintiff Antonio Polk, who is Black.

25.    FedEx's policies and procedures have a disparate impact on Black employees.

26.    FedEx retaliated against Plaintiff after he complained about and opposed the mistreatment of Black employees.

27.    When the Houston Building opened in 2021, there were approximately seven Black mid-level managers (Area Managers and Sort Managers), including Plaintiff Antonio Polk, Deanna Glover, Justin Fuller, Darian Marshall, Jamie James, Iesha Barrett, and Laurence Neal.

28.    By the time Polk began his medical leave in December 2024, FedEx had eliminated nearly all of these Black mid-level managers through termination, demotion, forced transfer, or constructive discharge, and was actively working to eliminate Polk and Glover as well.

29.    FedEx terminated or caused the constructive discharge of most of these Black managers due to unfair treatment while retaining Caucasian managers with comparable or worse performance.

**Antonio Polk**

30.    FedEx hired Polk on July 19, 2021, as an Operations Supervisor at the Houston Building, located at 505 Aldine Bender Road, Houston, Texas 77060, and promoted him to Area Manager on November 16, 2022.

31.    As an Area Manager, Polk was assigned to the overnight midnight sort shift at the Houston Building and earned an annual salary of approximately $150,000.

32.    Polk reported to Sort Manager Travis Perkins (White).

33.    Perkins reported to Senior Manager Paul Kurhela (White).

34.    Although Perkins held the title of Sort Manager and Polk was an Area Manager, their responsibilities were substantially the same.

35.    Perkins managed weekday operations (Monday through Friday), while Polk oversaw Sunday operations on the overnight sort, and his Black colleague Deanna Glover oversaw Saturday operations.

36.    Both Area Managers and Sort Managers were evaluated by the same performance metrics, including Total Labor Hours ("TLH") and scanning compliance.

37.    Kurhela himself acknowledged that he treats Sort Managers and Area Managers the same and holds them to identical performance expectations.

38. Polk performed his job duties competently and professionally throughout his employment.

39. On or about October 26, 2024, Perkins informed Polk that Kurhela wanted him placed on a Performance Improvement Plan ("PIP") for purported performance issues on a single Sunday shift.

40. Perkins himself stated that he felt a PIP for Polk was "going too far."

41. Despite his reservations, Perkins issued documentation for the PIP on or around October 27, 2024, in Kurhela's direction.

42. The stated reason for Polk's PIP was a single incident of missed "smalls" (small packages) from a Walmart trailer.

43. However, the missed "smalls" were actually the responsibility of a White supervisor named Chris Grundstrom, who was assigned to that area.

44. Polk had previously held Grundstrom accountable for the same issue.

45. When Polk attempted to document Grundstrom's failures, Kurhela instructed him not to "worry about documenting it," effectively tying Polk's hands to correct Grundstrom while holding Polk responsible for Grundstrom's continued failures.

46. Despite the missed smalls being Grundstrom's responsibility, Polk was placed on the PIP while Grundstrom received no discipline.

47. In contrast, Perkins, who controlled operations five days per week (Monday through Friday) and had documented performance issues going back to 2021, was never placed on a PIP.

48.    In contrast, Doug DeGeorge (White, Sort Manager) had 130 load failures on a Monday night shift but, upon information and belief, received no documentation or discipline, while Polk was placed on a PIP for only 60 failures.

49.    When Polk went on medical leave in December 2024, HR confirmed that there was actually no formal PIP on file for him, despite Perkins repeatedly telling him he was failing his PIP.

50.    On November 11, 2024, Kurhela assigned DeGeorge to the overnight sort Monday through Friday to assist Perkins in identifying areas for improvement and improving operations.

51.    No similar support was provided to Polk for his Sunday operations.

52.    On November 12, 2024, DeGeorge held meetings with trainers and supervisors where he attempted to solicit negative feedback specifically about Polk and Glover.

53.    Multiple trainers informed Polk that DeGeorge appeared to be seeking negative information about the African American managers.

54.    In November 2024, Kurhela also caused Polk's and Glover's previously approved Thanksgiving holiday time off to be rescinded and shortened without justification.

55.    Perkins later informed Polk that Kurhela had pressured him to revoke all of their approved time off and had threatened to discipline him for approving it, while Kurhela took no similar action regarding the approved time off of White managers.

56.    On November 14, 2024, Kurhela sent an email to Polk and Glover (the only two Black Area Managers on the overnight sort), directing them to stay off the golf carts.

57.    The Houston Building is a large facility, and golf carts are provided for managers to navigate the building efficiently after completing required training and certification.

58.    Both Polk and Glover were certified to operate the golf carts.

59.     Perkins (White) and Blane Alsup (White, Area Manager) were never prohibited from using golf carts and continued to use them regularly to perform their duties.

60.     The prohibition on golf cart use was imposed only on the Black Area Managers and impaired Polk's ability to effectively perform his job duties across the large facility.

61.     On November 18, 2024, Kurhela instructed Assistant Manager Andy Wokeme (Black) to send Polk and Glover a detailed list of additional tasks to complete.

62.     These additional tasks were outside Polk's and Glover's normal job responsibilities and had never previously been assigned to them.

63.     These additional tasks were not assigned to Perkins, Alsup, or other Caucasian managers.

64.     Perkins acknowledged in a recorded conversation on November 19, 2024, that these additional tasks were "bullshit" and that Polk and Glover had "never had to do" them, but insisted they must complete them anyway.

65.     Later on November 18, 2024, Kurhela called Polk and engaged in a hostile verbal tirade targeting both Polk and Glover.

66.     During this call, Kurhela made racially stereotypical and demeaning statements, grouping both Black managers together as a shared problem by stating: "You and Deanna, both of you, it's like talking to the same person."

67.     Kurhela's language during this call was hostile, degrading, and threatening, including statements such as: "You guys are going to lay the f*** down," "You're f***ing weak," "I don't give a f*** who you are," and "You going to feel me."

68.     This abusive tirade was directed exclusively at the Black managers and not at any White managers with similar or worse performance, including Perkins or Sort Manager Doug DeGeorge (White).

69.     On November 23, 2024, Kurhela sent an email to Polk and Glover, copying Perkins, DeGeorge, and Wokeme, berating only Polk and Glover about load quality feedback from another facility, although Perkins and DeGeorge also managed operations on the overnight sort and shared responsibility for load quality.

70.     Kurhela singled out Polk and Glover, the only two Black managers on the shift, for blame.

71.      Perkins and DeGeorge also managed operations on the overnight sort and had responsibility for load quality.

72.     Kurhela targeted Black Area Managers for criticism while exempting their White counterparts from similar accountability.

73.     On November 23, 2024, Kurhela sent a separate email to Polk and Glover, copying Perkins and Wokeme, berating Polk and Glover about TLS (scanning) performance and stating: "6 straight weeks of under 99. $150,000 a year salary for you 2 and this is what we get in return. Is this getting return on investment?"

74.     This email was directed only at the Black managers.

75.     Perkins controlled operations for five days per week and contributed significantly to the shift's overall performance issues.

76.     On November 27, 2024, Polk met with the on-site Senior HR Business Partner, Roger Escayg, to verbally report the hostile work environment he had been experiencing.

77.    Escayg acknowledged that Polk's shift was "basically in the hot seat" due to performance concerns communicated to him by Kurhela.

78.    Escayg acknowledged the mental stress Polk was experiencing but stated that the only advice he could offer was to "just do the job to the best of [his] ability."

79.    On or about December 2, 2024, DeGeorge falsely reported to Kurhela that Polk had failed to follow the script during a pre-sort safety meeting and had said "whatever" about safety.

80.    Based on that false report, Kurhela called Perkins and angrily stated that "that motherf*****r better get his safety stuff scheduled," referring to Polk.

81.    Perkins did not impose similar criticism on White managers whose pre-sort safety messages were comparable to Polk's.

82.    On December 10, 2024, Perkins subjected Polk to verbal abuse and public humiliation on the warehouse floor in front of supervisors and package handlers.

83.    During this confrontation, Perkins referred to Polk as a "nobody," claimed Polk was "failing his PIP" (a PIP that on information and belief HR later confirmed did not formally exist), and stated Polk should "look myself in the mirror or I'm not going to have a job."

84.    During this confrontation, Perkins repeated several concerns that Polk had confidentially shared with HR representative Escayg just days earlier, indicating that Polk's confidential HR complaints may have been disclosed without his consent.

85.    In or about January 2025, Polk escalated his complaint in writing to Wendy Ingram, Regional HR Senior Manager, describing the hostile work environment and unfair treatment that he and Glover, the only two Black managers on the overnight sort, experienced in contrast to their non-Black peers.

86.    On or about February 2, 2025, Polk further escalated his complaint to Andrea Cox, Vice President of Human Resources, identifying the disparate treatment of the two Black managers (Polk and Glover) compared to their non-Black peers.

87.    On or about September 10, 2025, Polk filed a second internal complaint with FedEx expressly identifying race discrimination and retaliation as the basis for the hostile work environment. On or about September 19, 2025, Polk filed his Charge of Discrimination with the EEOC.

88.    An investigation was eventually conducted; however, Polk was not interviewed during the investigation, despite his communicated willingness to participate. FedEx also failed to interview key witnesses identified by Polk.

89.    Neither Perkins nor Kurhela were suspended during the investigation, despite the serious nature of the complaints.

90.    In contrast, Black employees at FedEx had previously been suspended during investigations for alleged misconduct.

91.    Due to the continued psychological toll of the hostile work environment, discrimination, and harassment, Polk began medical leave on December 11, 2024.

92.    Polk has been formally diagnosed with severe anxiety and depression by his psychiatrist and therapist, conditions directly resulting from his workplace experiences.

93.    Polk was replaced by Charles (White) and Tamas (Hispanic). Polk later learned from Sort Manager Tirone Curtis (Black) that these replacements had been discussed by FedEx management before Polk and Glover began their medical leave, demonstrating that the decision to remove Polk was pre-planned rather than performance-based.

94.     While on medical leave, Polk learned that false narratives were being circulated about the reason for his leave.

95.     Perkins told employees that Polk went on leave "due to being placed on a PIP and running away from it."

96.     Since Polk filed his EEOC Charge and his September 2025 internal complaint expressly identifying race discrimination and retaliation, FedEx has refused to facilitate his return to work and has been unresponsive to his communications, including his January 23, 2026, request to return to a workplace free from discrimination and retaliation.

97.     FedEx has thereby effectuated Polk's constructive discharge because of his race and in retaliation for opposing race discrimination.

98.     Polk has suffered significant mental anguish, embarrassment, isolation, loss of wages and benefits, and loss of confidence due to FedEx's discriminatory and retaliatory conduct.

**Pattern of Eliminating African American Managers**

99.     Between 2021 and 2024, FedEx systematically removed Black mid-level managers from the Houston Building.

100.    The Black managers eliminated during this period include, but are not limited to, Justin Fuller, Darian Marshall, Jamie James, Iesha Barrett, and Laurence Neal.

101.    The same discriminatory conduct caused Polk and Glover to commence medical leave in December 2024 and ultimately drove Polk from his employment.

CAUSES OF ACTION

**Count I: Race Discrimination in Violation of The Civil Rights Act of 1866 and Title VII**

102.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

103.   At all times material to this action Defendant was an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), and 42 U.S.C. § 1981.

104.   Defendant is therefore subject to the provisions of 42 U.S.C. § 1981, and Title VII.

105.   Plaintiff is a Black individual who was qualified for his position.

106.   FedEx discriminated against Plaintiff by treating him differently from and less favorably than similarly situated non-Black employees and by subjecting him to discriminatory performance reviews, discipline, denial of workplace resources, assignment of additional tasks, denial of operational support, a hostile work environment, disparate terms and conditions of employment, and constructive discharge, each of which, individually and together, form discrete acts of adverse actions that are more than de minimis.

107.   FedEx's policies, patterns, and practices have produced a disparate impact against Black employees, including Plaintiff, with respect to the terms and conditions of employment.

108.   By reason of the discrimination suffered at FedEx, Plaintiff is entitled to all legal and equitable remedies available under 42 U.S.C. § 1981 and Title VII.

109.   Plaintiff suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**Count II: Retaliation in Violation of 4 The Civil Rights Act of 1866 and Title VII**

110.   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

111.   At all times material to this action Defendant was an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b), and 42 U.S.C. § 1981. Defendant is therefore subject to the provisions of 42 U.S.C. § 1981, and Title VII.

112.   Plaintiff is a Black individual who was qualified for his position.

113.    Plaintiff engaged in protected activity by opposing and reporting race discrimination to FedEx Human Resources, including: (a) verbal complaints to Senior HR Business Partner Roger Escayg on or about November 27, 2024; (b) written escalation in January 2025 to Regional HR Senior Manager Wendy Ingram; (c) written escalation on or about February 2, 2025 to FedEx's Vice President of Human Resources Andrea Cox; (d) a second internal complaint on or about September 10, 2025 expressly identifying race discrimination and retaliation; and (e) filing his EEOC Charge of Discrimination on or about September 19, 2025.

114.    FedEx retaliated against Plaintiff for engaging in protected activity by, among other acts, subjecting him to disparate discipline and a pretextual PIP; assigning additional tasks not assigned to non-Black peers; denying him operational support and workplace resources, including golf cart use; subjecting him to a hostile and verbally abusive work environment; circulating false narratives about the reason for his medical leave; refusing to discipline or remove the managers who harassed him; refusing to facilitate his return to work after he filed his EEOC Charge and September 2025 internal complaint; and constructively discharging him.

115.    Defendant's retaliatory actions, taken in response to Plaintiff's protected activities, violated 42 U.S.C. § 1981 and Title VII.

116.    Plaintiff suffered non-pecuniary losses, including but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

**Compensatory and Equitable Relief**

117.    Plaintiff is entitled to damages and injunctive relief.

118.    Plaintiff sustained damages, including lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses for which he is entitled to recovery under his causes of action.

119.    Plaintiff is also entitled to declaratory relief that a violation has occurred.

120.    Plaintiff is also entitled to equitable relief, including reinstatement and an injunction against future discrimination and retaliation.

**Attorneys' Fees**

121.    Plaintiff is also entitled to attorneys' fees, interest, and costs of court for services rendered in this cause, including trials and appeals.

**Exemplary Damages**

122.    Plaintiff is also entitled to receive punitive damages because FedEx engaged in discriminatory and retaliatory practices with malice or with reckless indifference to Plaintiff's federally protected rights.

**JURY DEMAND**

123.    Plaintiff requests a trial by jury to the extent allowed by law.

WHEREFORE, Plaintiff requests that Defendant Federal Express Corporation answer, and that on final trial, Plaintiff have judgment against Defendant for compensatory, declaratory and equitable relief, exemplary damages, attorneys' and expert fees, costs of suit, and interest as provided by law, and any further relief to which he may be entitled.

Respectfully submitted,


/s/ Elizabeth J. Sanford
Elizabeth "BB" Sanford
Texas Bar No. 24100618
esanford@sanfordfirm.com
Brian P. Sanford
Texas Bar No. 17630700
bsanford@sanfordfirm.com

**THE SANFORD FIRM**
2711 Hibernia St.
Dallas, Texas 75204
Telephone: (214) 717-6653
Facsimile: (214) 919-0113

**ATTORNEYS FOR PLAINTIFF**